IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

HARRY SHAIA, JR.,

    Trustee,

v.                                                                                Civil Action No. 3:17cv114

RUSSELL H. MALONE, III,

    Movant.

## MEMORANDUM OPINION

This matter comes before the Court on the Motion for Withdrawal of the Reference filed by Debtor Russell H. Malone, III ("Malone" or "Debtor"), Malone Family Holdings, LLC ("MFH"), 10200 W.B. Associates, LLC, Stony Point, LLC, MH Futures, LLC, Debtor's wife, Anne Elizabeth "Beth" Malone ("Ms. Malone"), and Debtor's son, Russell H. Malone, IV ("Russell") (collectively, the "Defendants"). (ECF No. 1.) Defendants seek permissive withdrawal of the adversary proceeding initiated when Trustee Harry Shaia, Jr., ("Trustee") filed a two-count complaint against Defendants in the underlying bankruptcy action. Trustee opposes the withdrawal. The Court exercises jurisdiction pursuant to 28 U.S.C. § 157(d).[1]

The parties fully briefed the matter in the Bankruptcy Court, and the Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. The matter is ripe for disposition. For the reasons that follow, the Court will deny the Motion for Withdrawal of the Reference and remand the case to the Bankruptcy Court.

---

[1] Section 157(d) provides, in relevant part, that "[t]he district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d).

# I. Factual and Procedural Background[2]

## A. Procedural Background

On June 3, 2014, Malone, faced with a sizable judgment against him, filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On April 7, 2015, the case was converted to a proceeding under Chapter 7, and the Trustee was appointed the next day. On December 6, 2016, after conducting extensive investigation into the estate property, the Trustee initiated an adversary action against Defendants by filing a Complaint in the Bankruptcy Court (the "Trustee Complaint"). The Trustee Complaint asserts two causes of action: (1) "Alter Ego/Reverse Veil Piercing"; and, (2) "Substantive Consolidation.[3]" (Trustee Compl. 37, 39.) On January 5, 2017, Defendants moved to withdraw the adversary proceeding initiated by the Trustee Complaint to this Court. The Trustee opposed the withdrawal, and the parties fully briefed the matter in the Bankruptcy Court.

## B. Allegations in the Trustee Complaint

The Trustee filed the Trustee Complaint against Malone, Ms. Malone, their son, Russell, and the following five LLCs (collectively, the "LLCs"):

1) Malone Family Holdings ("MFH"), a Virginia LLC created in March 2011, with its principal place of business at 10200 West Broad Street, Richmond, Virginia. At the time MFH was created, Malone and Ms. Malone held 99.3% of the membership interests in MFH.

---

[2] The Court recounts only the factual and procedural background relevant to the instant motion.

[3] "Substantive consolidation occurs when legally separate entities are actually part of a unified business operation. . . . Ultimately, substantive consolidation (like veil-piercing) boils down to the issue of when the court should disregard the corporate fiction because the corporations involved effectively disregarded it themselves." *In re James River Coal Co.*, 360 B.R. 139, 172 (Bankr. E.D. Va. 2007).

2) 10200 WB Associates, LLC ("10200 WBA"), a Virginia LLC with its principal place of business also at 10200 West Broad Street, Richmond, Virginia. Malone and Ms. Malone held 100% of the membership interests in 10200 WBA until they assigned all interest in 10200 WBA to MFH in March 2011.

3) Stony Point, LLC ("Stony Point"), a Virginia LLC with its principal place of business also at 10200 West Broad Street, Richmond, Virginia. Malone and Ms. Malone held 100% of the membership interests in Stony Point until they assigned all interest in Stony Point to MFH in March 2011.

4) Dickens Creek Farm, LLC ("DCF"), a Virginia LLC organized in 1998. Malone and Ms. Malone held 100% of the membership interests in DCF until they assigned all interest in DCF to MFH in March 2011.

5) MH Futures, LLC ("MH Futures"), a Virginia LLC organized in 2009. Malone and Ms. Malone held 100% of the membership interests in MH Futures until they assigned all interest in MH Futures to MFH in March 2011.

In sum, MFH was created in March 2011, at which time Malone and Ms. Malone transferred their 100% ownerships in 10200 WBA, Stony Point, DCF, and MH Futures to MFH. They then held a 99.3% ownership interest in MFH.[4] Malone manages each of the LLCs.

The forty-page Trustee Complaint details myriad interwoven financial transactions within and among the LLCs, Malone, Ms. Malone, and Russell. The Trustee Complaint alleges that

> through his use of various alter ego companies, the Debtor assigned, redirected, and reallocated any property, compensation, or gain to which he was entitled, to entities which he controls, thereby hiding them from his creditors. In reality, however, the Debtor retained complete dominion, control, and full beneficial use of all this property and proceeds for himself, Anne Elizabeth Jones Malone (his wife) and Russell H. Malone, IV (his son).

(Trustee Compl. 1.)

In his Complaint, the Trustee contends that "[e]ven a cursory examination of the financial records leads to the inevitable conclusion that, given the rampant commingling of funds over a

---

[4] Upon MFH's formation, the remaining 0.7% membership interest was "gifted" to Stephanie Harlow and Russell, the Malones' children. (Trustee Compl. 9–10.) Neither Russell nor Harlow made any contributions to MFH. MFH later purchased Russell's interest in August 2012 for $5,000 cash and forgiveness of approximately $32,000 in debt.

3

period of several years, the LLCs are hopelessly intertwined and should be consolidated into a single estate with that of the Individual Defendants." (*Id.* at 21.) The Trustee charges that Malone, Ms. Malone, and Russell all used MFH "as if it were a personal bank account." (*Id.* at 34.) The Trustee Complaint outlines the distribution of significant amounts of money to Malone that are inconsistent with the lesser amount of income Malone reported in the underlying bankruptcy action. In sum, the Trustee asserts that "the Debtor, and the Debtor alone, dominated the [LLCs] in all aspects," meaning that the LLCs amount to alter egos of Malone that should be consolidated into the underlying bankruptcy action.

The Trustee Complaint asserts two counts against all defendants:

**Count I:** "Alter Ego/Reverse Veil Piercing" – Malone used "the corporate form of the [LLCs] to evade [his, Ms. Malone's, and Russell's] personal obligations, perpetrate fraud, and commit injustice on [his, Ms. Malone's, and Russell's] creditors" (the "Alter Ego Count"), (*id.* at 37–39); and,

**Count II:** "Substantive Consolidation" – Because "there exists a substantial identify of interests between the Debtor and the other Defendants," Malone's estates should be substantively consolidated "with that of the other Defendants" (the "Substantive Consolidation Count"), (*id.* at 39).

The Trustee seeks, *inter alia*: (1) "A declaration that the [LLCs] are alter egos of [Malone, Ms. Malone, and Russell,] and liable for" Malone's debts; and, (2) "Substantive consolidation of the estates of the Debtor and the other Defendants." (*Id.* at 40.)

## II. Analysis

### A. Legal Standard for Withdrawal of Reference

Pursuant to 28 U.S.C. § 1334, the district courts have "original and exclusive jurisdiction of all cases" under the Bankruptcy Code. 28 U.S.C. § 1334(a). District courts may refer all

4

bankruptcy matters to bankruptcy judges, 28 U.S.C. § 157(a),[5] as this District has done since 1984. *See In the Matter of: The Administration of the Bankruptcy Courts and Reference of Bankruptcy Cases and Proceedings to the Bankruptcy Judges of this District* (E.D. Va. August 15, 1984) (Order). The district court retains the power, however, to "withdraw ... any proceeding referred" to the bankruptcy court, and decide the matter itself. 28 U.S.C. § 157(d). A party who seeks district court determination of a matter filed in an underlying bankruptcy action may, as Defendants have here, file a motion to withdraw the reference. The burden of demonstrating the appropriateness of withdrawal—whether mandatory or discretionary—rests with the movant. *See In re U.S. Airways Grp., Inc.*, 296 B.R. 673, 677 (E.D. Va. 2003).

Bankruptcy law provides two avenues by which a district court can order a case withdrawn from the bankruptcy court: mandatory withdrawal or permissive withdrawal. 28 U.S.C. §157(d).[6]

1. **Mandatory Withdrawal**

Mandatory withdrawal occurs when "resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting

---

[5] "Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a).

[6] Section 157(d) provides:

The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d).

interstate commerce." Neither party suggests that the Motion for Withdrawal of the Reference invokes this option.

### 2. <u>Discretionary Withdrawal</u>

Bankruptcy law also allows permissive, or discretionary, withdrawal but does so only "for cause shown." 28 U.S.C. § 157(d). Defendants here seek discretionary withdrawal.

The Bankruptcy Code does not define "cause" in the context of discretionary withdrawal. However, courts in this district weigh six factors to assess whether the movant has established cause for withdrawing the reference. *U.S. Airways*, 296 B.R. at 681.

> These factors include: (i) whether the proceeding is core or non-core, (ii) the uniform administration of bankruptcy proceedings, (iii) expediting the bankruptcy process and promoting judicial economy, (iv) the efficient use of debtors' and creditors' resources, (v) the reduction of forum shopping, and (vi) the preservation of the right to a jury trial.

*Id.*; *see also Chesapeake Trust v. Chesapeake Bay Enters., Inc.*, No. 3:13cv344, 2014 WL 202028, at *4 (E.D. Va. Jan. 17, 2014) (discussing same six factors). Although some courts treat the core/non-core factor as a threshold question, "[t]he better view is that discretionary withdrawal of reference should be determined on a case-by-case basis by weighing all the factors presented in a particular case, including the core/non-core distinction." *U.S. Airways*, 296 B.R. at 682.

### B. <u>Defendants Fail to Establish Cause to Withdraw the Reference</u>

Upon review of all the factors presented in this case, this Court concludes that the Defendants fail to demonstrate cause to withdraw the reference. Defendants have not established that the Trustee Complaint constitutes a non-core proceeding in which the Bankruptcy Court would lack authority to enter a final order or judgment. And because each of Defendants' arguments regarding uniformity, judicial economy, and efficiency depend on the proceeding being non-core, Defendants cannot show that those factors favor withdrawal of the reference.

Finally, Defendants cannot demonstrate that discouraging forum shopping or preserving the right to a jury trial support withdrawing the reference. As such, Defendants fail to meet their burden to establish that cause exists to withdraw the reference in the case at bar.

### 1. The Defendants Fail to Demonstrate that the Trustee Complaint is a Non-Core Proceeding

The determination about discretionary withdrawal centers on whether the Trustee Complaint constitutes a core or non-core proceeding. Indeed, *all* of the Defendants' arguments in favor of withdrawal rely on a finding that the Trustee Complaint is non-core. Defendants, however, fail to demonstrate that the Trustee Complaint qualifies as a non-core proceeding.[7] This factor, therefore, weighs heavily against discretionary withdrawal.

#### a. Standard for Evaluating the "Core" or "Non-Core" Nature of a Claim

Bankruptcy judges have the power to "hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11." 28 U.S.C. § 157(b)(1). A bankruptcy judge "may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11," but, absent the parties' consent, when the bankruptcy judge does so, he or she must submit "proposed findings of fact and conclusions of law to the district court." 28 U.S.C. § 157(c)(1). The district court then enters a final judgment "after considering the bankruptcy judge's proposed findings and conclusions." *Id.* If any party objects to the proposed findings and conclusions, the district court reviews those matters *de novo*. *Id.*

---

[7] The Court declines to rule on whether the Trustee Complaint in fact raises issues that constitute core proceedings, and will leave that determination, if or when necessary, to the Bankruptcy Court. *See* 28 U.S.C. § 157(b)(3) ("The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11."). This Court merely concludes that, for the purposes of the instant Motion, Defendants fail to meet their burden of establishing that the Court has before it a non-core proceeding.

Section 157 sets forth a non-exhaustive list of examples of core proceedings.[8] "The breadth of matters encompassed by these examples suggests, and courts construing the amended statute have confirmed, that 'Congress intended that "core proceedings" would be interpreted broadly,

---

[8] Core proceedings include, but are not limited to—

    (A)  matters concerning the administration of the estate;

    (B)  allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

    (C)  counterclaims by the estate against persons filing claims against the estate;

    (D)  orders in respect to obtaining credit;

    (E)  orders to turn over property of the estate;

    (F)  proceedings to determine, avoid, or recover preferences;

    (G)  motions to terminate, annul, or modify the automatic stay;

    (H)  proceedings to determine, avoid, or recover fraudulent conveyances;

    (I)  determinations as to the dischargeability of particular debts;

    (J)  objections to discharges;

    (K)  determinations of the validity, extent, or priority of liens;

    (L)  confirmations of plans;

    (M)  orders approving the use or lease of property, including the use of cash collateral;

    (N)  orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate;

    (O)  other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims; and[,]

    (P)  recognition of foreign proceedings and other matters under chapter 15 of title 11.

28 U.S.C. § 157(b)(2).

close to or congruent with constitutional limits . . . .'" *C.F. Trust, Inc. v. Tyler*, 318 B.R. 795, 803 (E.D. Va. 2004) (quoting *In re Arnold Print Works*, 815 F.2d 165, 168 (1st Cir. 1987)).

Ultimately, in order to deem a proceeding "core" or "non-core," a "[c]ourt [should] identify the nature of the cause of action itself, and whether the action invokes a right under title 11 or that arose in a case under title 11." *Chesapeake Trust*, 2014 WL 202028, at *3 (citing *Corliss Moore & Assoc., LLC v. Credit Control Servs., Inc.*, 497 B.R. 219, 224 (E.D. Va. 2013)). A proceeding "arising in" a case under title 11 "is a proceeding that, even if not specifically provided for in the Bankruptcy Code, can take place only in the context of a case under title 11," including "various matters affecting administration of a bankruptcy estate." *In re Gladstone*, 513 B.R. 149, 153 (Bankr. S.D. Fl. 2014). Bankruptcy courts "routinely consider[] state law issues in ruling on property rights in bankruptcy," *id.* at 156 (citing *Butner v. United States*, 440 U.S. 48 (1979)). A proceeding does not become a non-core proceeding "solely on the basis that its resolution may be affected by State law." 28 U.S.C. § 157(b)(3). Instead, the Court evaluates whether the claim seeks relief that would "require[] the Court to recognize whether something is or is not property of a debtor to be administered as part of the estate." *In re Gladstone*, 513 B.R. at 157. If the relief sought in the claim requires that the Court make such a determination, "the matter 'arises in' a title 11 case and 'arises under' title 11 within the meaning of 28 U.S.C. § 1334(b)." *Id.* In sum, "[t]he Court looks beyond the label applied to the claim to [the claim's] substance" to determine whether a claim is core or non-core. *Id.*

### b. Defendants' Arguments that Counts One and Two Constitute Non-Core Claims Founder

Defendants argue that both counts of the Trustee Complaint constitute non-core proceedings. Defendants fail to persuade.

### i. Defendants Fail to Establish that Count I, the Alter Ego Count, is a Non-Core Claim

Defendants flatly assert that Count I "is purely a state law claim and non-core." (Mot. 9.) According to Defendants, the Trustee's assertion that Malone used "the corporate form of the [LLCs] to evade [his, Ms. Malone's, and Russell's] personal obligations, perpetrate fraud, and commit injustice on [his, Ms. Malone's, and Russell's] creditors," (Trustee Compl. 37–39), "is defined by applicable non-bankruptcy Virginia state law. Accordingly, as Count I is a state law claim, it is, by definition, non-core." (Mot. 10.) The Trustee responds that, although Count I "seeks a determination that the [non-debtor defendants] are alter egos of the Debtor, and an order granting reverse veil piercing against [corporate non-debtor defendants]," courts in this division have "consistently held [that] such claims are core matters." (Resp. 10, citing *McCarthy v. Giron*, No. 1:13cv1559, 2014 WL 2696660, at *6 (E.D. Va. June 6, 2014).) The Trustee maintains that the LLCs constitute alter egos of Malone, who used the LLCs to benefit himself and his family personally. As such, the LLCs should be included in the bankruptcy estate. Indeed, in his quest to "untangle a confusing web of fraud the Debtors has concocted over a period of years," (Trustee Compl. 1), the Trustee seeks to unwind "the hopelessly entangled" LLCs, (Resp. 2), and get "an order determining what is property of the estate and thus subject to administration in the Debtor's chapter [11] case." *In re Gladstone*, 513 B.R. at 156.

Because "[t]he determination of property of the estate is a matter that can only arise in a title 11 case, and so it is a proceeding 'arising in' a case under title 11," the Trustee's goal of determining what is property of the estate appears to bring Count I soundly within the scope of a core proceeding. *See also* 28 U.S.C. § 157(b)(2)(A) and (E) (explicitly defining "matters concerning the administration of the estate" and "orders to turn over property of the estate" as "[c]ore proceedings"). Moreover, the Trustee correctly identifies that "courts in the Eastern

District of Virginia that have addressed [whether a veil piercing/alter ego action is a core proceeding], for the most part, have found it to be a core proceeding." *McCarthy*, 2014 WL 2696660, at *6 (collecting cases).

Because Defendants provide the Court with no compelling reason to find otherwise, they fail to establish that Count I is a non-core proceeding.

### ii. Defendants Also Fail to Establish that Count II, the Substantive Consolidation Count, is a Non-Core Claim

Defendants concede that "substantive consolidation is a product of bankruptcy law," but argue regarding Count II, that "substantive consolidation that targets a non-debtor is non-core." (Mot. 10.) Thus, according to Defendants, because the Trustee "seeks substantive consolidation of all Defendants, only one of whom is a debtor, Count II is also non-core." (Mot. 10.) The Trustee counters that Count II seeks to "achieve the Trustee's goal of returning the Debtor's property to the estate for administration by the Trustee on behalf of creditors." (Resp. 13.) The Trustee argues that "the commingling of the assets of the Debtor with the Defendants was so pervasive over a period of several years, that 'unwinding' the estates is impractical," rendering substantive consolidation necessary. (*Id.*) According to the Trustee, "it is of no moment that some Defendants are non-debtors." (*Id.* at 14.)

Substantive consolidation "is a request for relief available only in bankruptcy," and is thus "a proceeding 'arising in' a case under title 11." *In re Gladstone*, 513 B.R. at 157. Defendants do not persuasively demonstrate otherwise by arguing that "substantive consolidation that targets non-debtor entities is non-core." (Mot. 10.) First, the Trustee Complaint seeks substantial consolidation of the Defendants because "there exists a substantial identity of interests between the Debtor and the other Defendants," (Trustee Compl. 39), and because the LLCs constitute alter egos of Malone. The Trustee therefore seeks substantive consolidation of

11

parties that, according to the Trustee, have the same interests as—and are alter egos of—Malone. Second, the *Gladstone* court addressed a complaint seeking substantive consolidation of non-debtor entities with the debtor, and succinctly held that substantive consolidation constituted "a request for relief available only in bankruptcy." *In re Gladstone*, 513 B.R. at 157. Defendants provide this Court with no persuasive reason to decide otherwise.

Thus, at the very least, Defendants fail to establish that the Trustee Complaint constitutes a non-core proceeding, and therefore do not demonstrate that this factor support withdrawal of the reference.

### 2. Defendants Fail to Demonstrate that Uniformity, Judicial Economy, and Efficiency Favor Withdrawal of the Reference

Regarding the other *U.S. Airways* factors, Defendants' arguments that uniformity, judicial economy, and efficiency weigh in favor of this Court adjudicating the Trustee Complaint all depend on a finding that the Trustee brings a non-core proceeding. For that reason, they falter.

Regarding uniformity, Defendants contend that "[t]here is no real value in having the Bankruptcy Court preside over . . . a non-core proceeding consisting of a state law cause of action and non-core substantive consolidation of non-debtors." (Mot. 11.) As to judicial economy, Defendants assert that, "because the [Trustee] Complaint presents non-core proceedings, the Bankruptcy Court may only 'submit proposed findings of fact and conclusions of law to the district court' that are subject to a *de novo* review by the District Court, unless all parties consent to the Bankruptcy Court's entry of final orders."[9] (*Id.* at 12 (quoting 28 U.S.C. § 157(c)(1) and (2)).) Finally, the Defendants suggest that denying the withdrawal of reference

---

[9] This statement of the law lacks nuance. Although 28 U.S.C. § 157(c)(1) requires that a district court enter the final order or judgment for a non-core proceeding, the district court only reviews *de novo* the bankruptcy judge's proposed findings of fact and conclusions of law "to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1). Absent timely and specific objections, the district court enters the final judgment "after considering the bankruptcy judge's proposed findings and conclusions." *Id.*

would be inefficient because "the Bankruptcy Court cannot enter a final judgment or order in a non-core proceeding," and therefore "[d]eclining to withdraw reference . . . would likely require litigation of this case twice." (*Id.* at 12–13.)

These arguments all rest on a faulty premise: that the Trustee Complaint constitutes a non-core proceeding. Because Defendants have failed to establish the non-core nature of the Trustee Complaint, their arguments regarding uniformity, judicial economy, and efficiency fail as well.[10]

### 3. Defendants Fail to Demonstrate that Considerations of Forum Shopping Favor Withdrawal of the Reference

Defendants claim that the *U.S. Airways* factor of forum shopping is "inapplicable in this case [because t]he Trustee chose to initiate this adversary proceeding in the Bankruptcy Court." (Mot. 13.) The Trustee counters that the Defendants' attempt to withdraw the reference in this adversary proceeding after "Debtor voluntarily filed a bankruptcy petition seeking the protections of the Bankruptcy Court and consenting to its jurisdiction . . . . smacks of forum shopping." (Resp. 16.)

Regardless of whether the Trustee Complaint constitutes a core or non-core proceeding, a clear relationship exists between the Trustee Complaint and the underlying bankruptcy action. The Trustee Complaint seeks to "capture all property of the bankruptcy estate," alleging that Debtor has created "a confusing web of fraud . . . over a period of years to hide his assets, and those of his family members, from their creditors." (Trustee Compl. 1–2.) Debtor invoked the jurisdiction of the Bankruptcy Court in 2014 when he filed a voluntary petition for relief under

---

[10] Moreover, the Bankruptcy Court has presided over the underlying action since 2014. The Bankruptcy Court's resulting intimate knowledge about Malone, his finances, his family, and his business means that efficiency and judicial economy (i.e., ensuring that decisions comport with other underlying decisions) favor denying the Motion for Withdrawal of the Reference.

Chapter 11. Given the clear relatedness of the Trustee Complaint to the underlying bankruptcy action voluntarily instigated by Debtor, it could be possible that Defendants' Motion to Withdraw the Reference suggests forum shopping. That said, independent of Defendants' motives in moving to withdraw the reference, they do not establish that considerations of forum shopping favor withdrawing the reference in this case.[11]

### 4. Defendants Fail to Demonstrate that Preserving the Right to a Jury Trial Favors Withdrawal of the Reference

Defendants assert that the final *U.S. Airways* factor as to a jury trial "is not applicable here" because neither the Defendants nor the Trustee has requested trial by jury. (Reply 10; *see also* Mot. 13.) The Trustee, however, argues that Defendants' failure to request a trial by jury means that this factor weighs against discretionary withdrawal.

A bankruptcy court generally lacks the power to conduct jury trials, unless "specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties." 28 U.S.C. § 157(e). Thus, when a party requests a jury trial in an adversary proceeding before a bankruptcy court, that factor can weigh in favor of withdrawing the reference. However, even when a party in a bankruptcy action requests a jury trial,

> the mere fact that the district court must conduct a jury trial in an adversary proceeding "does not mean that the bankruptcy court immediately loses jurisdiction of the entire matter or that the district court cannot delegate to the bankruptcy court the responsibility for supervising discovery, conducting pre-trial conferences, and other matters short of the jury selection and trial."

*In re QSM, LLC*, 453 B.R. 807, 810 (E.D. Va. 2011) (quoting *In re Stansbury Poplar Place, Inc.*, 13 F.3d 122, 128 (4th Cir. 1993)).

Here, neither Defendants nor the Trustee requested a jury trial, so no need to preserve

---

[11] For example, Defendants point to nothing indicating that the Trustee filed the Trustee Complaint in the Bankruptcy Court in order to avoid having a district court decide the matter. Certainly, the Court sees nothing in the record indicating that the Trustee engaged in forum shopping in that way.

that right exists. Defendants' contention that the factor "is not applicable" unsuccessfully attempts to sidestep Defendants' burden of establishing cause to withdraw the reference. Because no need to preserve either party's right to a jury trial exists, Defendants fail to establish that this factor supports withdrawal.

### III. Conclusion

For the foregoing reasons, the Court will deny the Motion for Withdrawal of the Reference. (ECF No. 1.) The Court will remand the case to the Bankruptcy Court. An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Date: 9/21/2017
Richmond, Virginia